Nena H. Quinton, *Appellant,* v. P. H. Adams, *Appellee.*

No. 16,696.

### SYLLABUS BY THE COURT.

Homesteads—*"Occupied as a Residence"*—*Execution Sale.* Under the facts stated in the opinion it is held that a tract of land is not occupied as a residence by the family of the owner so as to exempt it from sale upon execution for his debts.

Appeal from Shawnee district court. Opinion filed December 10, 1910. Reversed.

*Edwin A. Austin,* for the appellant.

*J. B. Larimer,* for the appellee.

The opinion of the court was delivered by

BURCH, J.: Nena H. Quinton recovered a judgment against P. H. Adams, and caused his farm in Menoken township, Shawnee county, to be sold for its satisfaction. Motions to confirm and to set aside the sale were made, and after a hearing the district court set aside the sale on the ground that the land is the homestead of the judgment debtor. The creditor appeals. The hearing was had in June, 1909, upon affidavits, and the controversy is presented to this court in the same form that it was to the district court.

In 1899 the appellee lived on the farm with his wife and minor son. Prior to that time they had been in the habit of coming to Topeka for the winter and going back to the farm in the spring. In 1899 the appellee and his family removed to Topeka and have never returned to the farm to reside. At first they lived at No. 308 West Sixth street, Topeka, but soon afterward moved into the dwelling house at No. 621 Topeka avenue, then owned by Sara H. Quinton, the mother of Mrs. Adams. They have ever since resided there. Later in 1899 the appellee went to New Mexico on some cattle business, and beginning with that year was in New Mexico much of the time for three years. During that period he was back and forth between Topeka and New Mexico several times. About five years before the hearing he was employed, from month to month, as a salesman at the Mills company's store in Topeka, which employment still continues. In 1906, while the son was still a minor, the property at No. 621 Topeka avenue was deeded to him by Sara H. Quinton. During the appellee's absence from the farm it has been rented, sometimes for crop rent and sometimes for cash rent. In 1907 he leased it for three years, beginning March 1,

1908, to John M. Skinner. Skinner has subleased the premises to a tenant who occupies the buildings.

No reason of any kind is offered for leaving the farm, and no hint is given of what the appellee expected to do in town. Mrs. Adams testifies at length in the case, but withholds all information as to the character of the arrangement whereby she and her husband and son jointly occupy the Topeka avenue property with her mother. She says the arrangement was made at the request of her mother, was "temporary," and was mutually satisfactory to all parties. The appellee says the arrangement was made at the request of his wife's mother, and was "understood to be temporary and liable to be terminated by defendant's removing with his family to said homestead on said farm." Witnesses for the appellant undertake to state the facts. Mrs. Quinton bought the house and fixed it up for a home for the appellee and his family, they to furnish her a home with them and take care of her there. Mrs. Quinton had one room for herself, and the appellee and his family had the remainder of the house, which was fitted up and furnished for permanent occupancy.

The appellee and his wife say in general phrases that "nearly all of the time" and for "a large part of the time" he has had horses and other personal property on the land, and that he retained the right to use and occupy a portion of it. These statements are met by definite evidence of the facts. When the appellee first came into town some household goods were left at the farm, but when he moved into the Quinton house they were all brought there and used to furnish the new quarters. At least as early as 1903, and probably much earlier, the appellee had no personal property of any kind left at the farm, particularly no tools, implements or stock necessary on a farm, and he never reserved or retained for himself any rooms or portions of the dwelling house, barn or buildings necessary to residence there.

Quinton v. Adams.

Immediately after the appellee established himself at No. 621 Topeka avenue he engaged in the New Mexico venture. He stated to his wife's brother that he had gone into the cattle business with W. W. Mills; that they had a lease on several thousand acres for several years; that he expected to make some money, and that that was the only thing he could do, because his wife would not go back to the farm—would not live there. Two witnesses relate conversations with the appellee's wife, in his presence, in which she said they had left the farm for good, and never intended to return to it. The appellee does not deny these statements and conversations. He merely says he has never expressed an intention to abandon the homestead, and has always intended "ultimately" to return to it. His wife merely says that she has never stated that the land was not the homestead of herself and family and has always claimed the farm as her permanent residence.

When the appellee withdrew from New Mexico he did not go back to the farm. For two or more years, and until he went to work for the Mills company, he gives no account of himself. Why he was detained from returning to his homestead is not stated. At no time was it leased for longer than a year, until the Skinner lease was given, and hence he could have obtained possession had he so desired.

Being unable, during the long blank period mentioned, to mature his persistent intention to return to his farm, and thereby terminate his "temporary" absence from it, the appellee changed his occupation a second time, at least. He secured "temporary" employment, "liable to be terminated at any time," with the Mills company. This precarious tenure, however, had lasted for five years at the time of the trial. Although it can be terminated any month, the appellee expresses no purpose to resign this employment; and no fact, situation or relation is offered in evidence in-

dicating even a remote probability that it will come to an end or that he will ever go back to the farm.

The farm itself is no longer a desirable one. The appellee has been willing to sell it, but has been unable to find a purchaser for it because it has been seriously damaged by floods.

Besides testifying directly to their intention, the appellee and his wife offer in evidence some self-serving acts and declarations. Two witnesses say they have frequently heard the appellee express an intention to return to the farm. He has voted in Menoken township and not elsewhere, and years ago paid some tuition for his son's attendance at the Topeka schools. Such tuition, however, was rarely demanded by the school authorities. This evidence is quite consistent with a purpose to hold creditors at bay while maintaining a settled residence in town.

The constitution and statutes of this state exempt from sale on execution a homestead "occupied as a residence by the family of the owner." (Const., art. 15, § 9; Gen. Stat. 1868, ch. 38, § 1, Gen. Stat. 1909, § 3646.) The affairs of men are too varied to permit them to occupy their homesteads every moment of time. Duty, necessity or even pleasure may occasion extended absences which will not defeat the exemption. But it must appear from the circumstances that an absence in fact is genuinely temporary or the homestead privilege is lost. Otherwise the words of the constitution and statute which require not only occupancy, but occupancy as a family residence, would be deprived of all force.

All the evidence considered, the appellee's claimed intention to occupy the land in controversy as a residence for his family is refuted, and an absence is disclosed which is incompatible with occupancy for residence purposes as the law contemplates.

The judgment of the district court is reversed, and the cause is remanded with direction to confirm the sheriff's sale.

JOHNSTON, C. J., dissenting.