Smith v. McClintick.

No. 23,140.

AUGUSTA SMITH, *Appellee,* v. BERT MCCLINTICK, as Administrator of the Estate of R. W. Smith, deceased, *Appellant.*

SYLLABUS BY THE COURT.

HOMESTEAD—*Sufficient Evidence to Establish Claim of Homestead.* Plaintiff's evidence was sufficient to establish that certain real estate was occupied by herself and her husband in his lifetime as their homestead and that after his death she continued to occupy and claim it as her homestead. There was evidence to the contrary. *Held,* that the findings of the trial court in plaintiff's favor are conclusive. (*O'Neal v. Bainbridge,* 94 Kan. 518, 146 Pac. 1165.)

Appeal from Coffey district court; WILLIAM C. HARRIS, judge. Opinion filed April 9, 1921. Affirmed.

*Gilbert H. Frith,* of Emporia, for the appellant.

*R. M. Hamer, H. E. Ganse,* and *O. S. Samuel,* all of Emporia, for the appellee.

The opinion of the court was delivered by

PORTER, J.: Augusta Smith, widow of R. W. Smith, sued to enjoin the administrator of her husband's estate from selling a farm in Coffey county to pay the debts of the estate, plaintiff claiming that the farm is her homestead and exempt. The judgment was in her favor and the administrator appeals.

The plaintiff and R. W. Smith were married at Tulsa, Okla., in June, 1917. Before that time the husband had been engaged in the real-estate and loan business, and owned real estate in Tulsa, mostly unimproved, and a ranch near Claremore, Okla. In May, before the marriage, the husband traded for or purchased the land in controversy, consisting of a farm of about 70 acres in Coffey county, Kansas, the plaintiff furnishing part of the consideration. Immediately after their marriage the husband and wife moved to this farm and occupied one of the rooms in the farm house, the other part of the house being occupied by the family of the tenant under the former owner.

The sole question is whether the plaintiff and her husband occupied the place as their homestead during the husband's

lifetime and whether his widow so occupied it since his death as to retain its homestead character. The case turned upon conflicting evidence and there was abundance of evidence to sustain the finding in favor of the plaintiff. Twenty witnesses, many of them neighbors and friends residing near the farm and other friends and acquaintances in Oklahoma, testified to facts tending to show that the farm was considered by Mr. Smith and his wife as their permanent home. Many of these witnesses testified to statements made by the husband referring to the place as his home or of his intention to make it his home. There was testimony that he said to his friends in Oklahoma that his home was in Kansas and that he was well satisfied with the change he had made; that he was going to stay in Kansas. A witness who had an office with Mr. Smith prior to the latter's marriage testified that both the husband and wife spoke of their intention to stay in Kansas, and further, that Smith never had an office in Tulsa after he moved to the farm in Kansas. The plaintiff and several witnesses testified that the plaintiff and her husband maintained one of the rooms in the downstairs part of the house on the farm which was kept furnished with a bed, rug, dresser, trunk, chairs, etc., and that they kept their clothing there. The plaintiff testified that she and her husband never occupied nor lived on any of the land they owned except the land in controversy, and that she voted in the fall election of 1918 at the precinct near the farm. She admitted that they made frequent trips to Oklahoma on account of property they owned there and that they made trips to Texas and other places on business. According to plaintiff's testimony, on November 16, 1918, she went to Oklahoma to secure the continuance of a law suit in which her husband was a party, and being unable to secure the continuance, she sent for her husband; that when he arrived on the 23d of November he was sick, went to bed at the hotel and died on December 11. She testified that after her husband's death she continued to occupy the room in the house on the farm until January 16, 1919, when the tenant, who had set up a claim of ownership to the property, told her she could not stay there any longer.

The defendant offered evidence to show that the plaintiff and her husband made frequent trips in their motor car away from the place and often would be gone for a considerable time;

that they kept a room in Tulsa furnished substantially like the one on the farm which they occupied while at Tulsa. There was evidence offered by the defendant to show that three months before Mr. Smith died he registered for the draft at Claremore, Okla., and gave Claremore as the permanent home address of himself and wife; that about the same time he signed a supporting affidavit to the questionnaire of one Bernard Pierce who lived in Coffey county, and that in answer to questions stated in the affidavit that he lived 200 miles away from Pierce. In explanation of the statements of her husband when registering for the draft, the plaintiff offered testimony that he decided to register at his old home in Tulsa because of the fact that he was better acquainted with the officials there who would pass upon his claim for deferred classification which he made on the ground that he was engaged in agricultural pursuits.

While there are some so unfortunate as to be homeless, there are on the other hand, in every community, others who have more than one home, but in most instances the owner of several homes has one which he considers as his permanent place of abode. Which is the permanent dwelling place of a person is a question to be determined by his intention and not by the relative number of days in a given period that he actually stays at a place.

The defendant's brief, after setting out the substance of the testimony in support of the case made by the plaintiff, admits that "standing alone it would, of course, justify a court in ruling that the farm in question was the residence of appellee and her husband during his lifetime." But it is insisted that the plaintiff's evidence, considered in the light of the conflicting testimony, must be disregarded. It is hardly necessary to state that this contention is not sound. Where there is a conflict in the testimony the question is to be determined by the trier of fact—in this case, by the jury.

In *Fredenhagen v. Nichols & Shepard Co.*, 99 Kan. 113, 160 Pac. 997, a case involving the disputed question of whether a homestead had been abandoned by its owner, it was said in the opinion:

"If taken alone, the evidence to establish that the farm was the homestead of Proctor and his wife was such as should convince any reasonable

man that the homestead had not been abandoned. The evidence to the contrary, if considered alone, was such as would convince a reasonable man that the homestead had been abandoned. This makes the findings of the trial court conclusive in this court. (*O'Neal v. Bainbridge*, 94 Kan. 518, 146 Pac. 1165.)" (p. 114.)

We have not attempted to set forth all the facts and circumstances tending to support the plaintiff's claim nor all of those relied upon by the defendant. Enough has been stated to show that upon the question of fact there was a conflict in the evidence which has been determined against the defendant's contention.

The judgment is affirmed.