No. 33,180

MARGARET L. WALTZ, *Appellee*, v. MARY J. SHEETZ, MARY MILDRED BLEAN and JACK BLEAN, *Appellants* (JOHN W. LEWIS, Administrator of the Estate of ISAAC S. SHEETZ, Deceased, Intervenor, *Appellee*).

(61 P. 2d 883)

Opinion filed November 7, 1936.

*J. J. Schenck* and *C. P. Schenck*, both of Topeka, for the appellants.

*Ralph T. O'Neil, John D. M. Hamilton* and *Barton E. Griffith*, all of Topeka, for appellee John W. Lewis.

*W. B. Rogers* and *S. L. Lashbrook*, both of Topeka, for appellee Margaret L. Waltz.

The opinion of the court was delivered by

HARVEY, J.: Briefly stated, this action as it was tried in the court

below and as it reaches us, involves liens claimed by the plaintiffs and the intervenor upon certain real property which the defendant, Mary J. Sheetz, claimed as a homestead, and which her daughter, Mary Mildred Blean, claimed under a deed from her mother. The trial court made findings of fact, and held the property not to be the homestead of Mrs. Sheetz and rendered judgment accordingly. Mrs. Sheetz and her daughter have appealed.

The findings of fact made by the trial court may be summarized as follows: Mary J. Sheetz and Isaac S. Sheetz were married in 1899, and thereafter made their home in Topeka. Mr. Sheetz died in January, 1933. About 1914 they purchased a residence property on Garfield avenue, where they resided with their only child, now Mrs. Blean, for about ten years. Mr. Sheetz appears to have been in the real-estate and insurance business. In 1923 he purchased lots in a residence district on Boswell avenue and had a modern bungalow built thereon. This was completed in 1924, and he and his family moved into the property and resided there until August, 1926. In that month Mr. Sheetz brought an action against his wife for divorce and obtained a decree of divorce on October 23, 1926, which decree, among other things, forever barred the defendant, Mary J. Sheetz, from claiming any right, title, or interest in or to any of the real or personal property which Mr. Sheetz then owned, or might thereafter acquire. About December 1, 1926, Isaac S. Sheetz leased the property on Boswell avenue for one year to a Mr. Barnett, who soon thereafter moved into it and occupied it. On December 26, 1926, Isaac S. Sheetz and Mary J. Sheetz were remarried and went to live at the Kansan hotel, and remained there until January, 1929, when they moved into the Hurley apartments at Eleventh and Harrison streets, and remained there until January, 1930, when they moved into their property on Garfield avenue. They continued to live in the Garfield avenue property until Mr. Sheetz' death in January, 1933, and Mrs. Sheetz continued to live there until August, 1933. In the meantime, at some date not stated, the daughter had married and she and her husband lived at some place apart from her parents. Also at sometime, perhaps while they were living at the Kansan hotel, Mr. Sheetz made an optional contract of sale of the Garfield avenue property to a Mr. Testerman, who went into possession of the property under the contract, made the payments provided therein for a time, found he was unable to continue doing so, and surrendered the contract, but leased the prop-

erty and occupied it under a lease for about a year. This time appears to have been up when Mr. and Mrs. Sheetz moved into the property in January, 1930. In the meantime, also, Mr. Barnett, to whom Mr. Sheetz had leased the Boswell property in December, 1926, and who had released for another year, surrendered his lease in January, 1928. Mr. and Mrs. Sheetz then leased the property to a Mr. Gartner under a written lease beginning February 1, 1928. Gartner moved into the property and occupied it, under successive written leases from year to year, until August, 1933. While they were living at the Kansan hotel, Mary J. Sheetz registered from that address as a voter in October, 1928, and voted in November of that year, and while they were living in the Garfield avenue property Mr. Sheetz registered as a voter from that address and voted in November, 1930, in March and April, 1931, and in August and November, 1932. On September 7, 1932, Isaac S. Sheetz conveyed the property on Boswell avenue to his wife, Mary J. Sheetz. The trial court found this conveyance was without consideration; that the grantee did not know of it until shortly prior to her husband's death, and that at the time it was executed Isaac S. Sheetz was insolvent and did not retain sufficient property to pay his creditors, among whom was the Citizens State Bank. On August 17, 1933, Mary J. Sheetz moved into the Boswell avenue property, and has since resided there.

On July 7, 1934, Margaret L. Waltz brought an action in the district court against Mary J. Sheetz for a money judgment, and on the trial of that action, in January, 1935, recovered judgment in the sum of $5,000, upon which an execution had been issued and returned unsatisfied. Two days after that action was brought, and on July 9, 1934, Mary J. Sheetz conveyed the Boswell avenue property to her daughter, Mary Mildred Blean. At the time that conveyance was made both the grantor and the grantee therein knew the action was pending. The conveyance was without consideration and was made with the intent of delaying, hindering and defrauding Margaret L. Waltz in the enforcement of her claim. Mary J. Sheetz was then insolvent.

On November 21, 1932, Isaac S. Sheetz and Mary J. Sheetz executed their promissory note to the Citizens State Bank for $340, due in ninety days, and on December 18, 1932, they executed their note to the same bank for $975, due in ninety days. Both notes were renewals of previous notes executed by them to the bank for

money the bank had loaned them. They were unpaid when Mr. Sheetz died in January, 1933. Isaac S. Sheetz left a will, by the terms of which his entire estate was given to his wife. This will was admitted to probate February 6, 1933, but no executor or administrator was then appointed. Upon the petition of the Citizens State Bank as a creditor a citation was issued to the widow and daughter to show cause why the estate should not be administered, as a result of which Mary J. Sheetz elected to administer, and on June 21, 1933, an order of appointment was made conditioned that she give bond in the sum of $1,000. She did not give this bond until January 26, 1934, when letters of administration were issued to her. Thereafter the bank filed its claim upon the notes, which claim was allowed on May 24, 1934; also the Citizens Investment Company filed a claim, which was allowed on the same date. Thereafter, and under proceedings which need not be detailed, Mary J. Sheetz was removed as administrator of the estate of her husband, and on the same date, April 27, 1935, John W. Lewis was duly appointed and qualified as administrator *de bonis non* of the estate of Isaac S. Sheetz.

After Margaret L. Waltz had recovered a personal judgment against Mary J. Sheetz in January, 1935, and an execution had been issued thereon and returned unsatisfied, appropriate proceedings were taken in the same action to subject the Boswell avenue property to the payment of that judgment. John W. Lewis, as administrator *de bonis non* of the estate of Isaac S. Sheetz, by leave of court, intervened in that proceeding and asked that the property be subjected to the payment of the debts allowed in the estate of Isaac S. Sheetz and the costs of administration. As previously stated, the principal defense of Mary J. Sheetz was that the Boswell property was her homestead, hence could not be taken for her debts; also that it was the homestead of Isaac S. Sheetz at the time of his death and not subject to the payment of his debts.

After making the findings summarized above, the trial court made conclusions of law that the conveyance of the Boswell avenue property, September 7, 1932, by Isaac S. Sheetz to his wife was void as to his creditors, and that the property is still charged with the payment of his debts allowed in the probate court and subject to sale by the administrator for that purpose; that the administrator's cause of action was not barred by any statute of limitations; that the conveyance of the Boswell avenue property, July 9, 1934, by

Mary J. Sheetz to her daughter, Mary Mildred Blean, was void as against the intervenor and the plaintiff herein; that after the decree of divorce, October 23, 1926, the Boswell avenue property was not occupied as a homestead by Isaac S. Sheetz or Mary J. Sheetz during the lifetime of Isaac S. Sheetz, and that the same was not the homestead of Isaac S. Sheetz and wife at the time of his death in January, 1933, and that the Garfield avenue property was the place of residence and the homestead of Isaac S. Sheetz and Mary J. Sheetz from January, 1930, to the date of the death of Isaac S. Sheetz. Judgment was rendered in accordance with these findings and conclusions.

Appellants complain of certain findings of the court and have moved that they be set aside and other findings substituted. Mrs. Sheetz testified that when the Garfield avenue property was purchased, $2,500 of her individual money was used in the purchase. She asked the court to find that fact, but no finding was made on the point. We do not regard it as important in this action. The title to the Garfield avenue property is not involved in this litigation except as it may enter into the history of the question of homestead. The litigation concerns the title to the Boswell avenue property.

The court found there was no consideration for the deed dated September 7, 1932, from Isaac S. Sheetz to Mary J. Sheetz for the Boswell avenue property. Appellants complain of that, and contend the court should have found a substantial, valuable consideration for that conveyance. The difficulty with the matter is that Mrs. Sheetz testified two ways on that point. She was first called as a witness for the plaintiff and intervenor, and with respect to that deed testified that she knew nothing about it until Mr. Sheetz' death, or a few days before; that he had never talked with her about it, and that she had given no consideration for it. Later in the trial appellants produced evidence to this effect: That at the time of the divorce action in 1926 Mr. Sheetz wrote his attorney a letter in which he stated that he and his wife had agreed upon a property settlement by which he was to have title to all the property he then owned, and that he was to pay her $6,000, $100 in cash, and to give her a note for $5,900, due in two years, without interest, partial payments on the note to be made as the parties agreed. In the divorce decree the court found "that a property settlement has been made between the parties wherein the plaintiff has given to the de-

fendant a promissory note for $6,000." There was testimony, also, that Mrs. Sheetz consulted an attorney about the divorce case, told him about the property settlement, and discussed with him the advisability of filing an answer to the petition. She told her attorney that Mr. Sheetz had told her he had filed the divorce suit and was going through with it to show her he could get a divorce, but if she did not answer, or make a defense in the case, he would remarry her after he obtained the decree of divorce. Mrs. Sheetz' attorney, never having heard of such a proposition, questioned whether she could rely upon such promise. She thought perhaps she could rely upon it, and no answer was filed, or defense made in the divorce action. Directly after the decree was entered she apparently questioned the good faith of his promise and had her attorney file a motion for a new trial. Later she had him withdraw that, and the parties were remarried, as previously stated. Neither of the attorneys testified to having seen the $5,900 note. When called upon the stand later in the trial Mrs. Sheetz testified the note had been given to her, and that she gave that note back to Mr. Sheetz in September, 1932, in consideration of his deeding to her the Boswell avenue property. Appellants argue that the court should have believed that testimony rather than that given by Mrs. Sheetz earlier in the trial. This is an argument which might have been and no doubt was made to the trial court. It is the function of a trial court to find the facts in controverted testimony, and frequently the court is compelled to believe the testimony of one witness rather than that of another, or of the same witness at one time in the trial rather than that given at another time. It is clear the court had substantial, competent evidence on which to base the finding made.

The trial court found that Isaac S. Sheetz was insolvent in September, 1932, and when he conveyed the Boswell avenue property to his wife he did not retain sufficient property to pay his debts. Appellants complain of that finding and say the evidence disclosed he owned at that time not only the Garfield avenue property and the Boswell avenue property, but also owned a farm in Osage county. The evidence discloses that all of these properties were encumbered —the Garfield avenue property with a mortgage of $2,500, the Boswell avenue property with a mortgage of $2,500, and the Osage county farm with a mortgage of $3,500 or $4,000. The evidence further discloses that the mortgages were foreclosed on the Garfield avenue property and on the Osage county farm with no equity to

the owner. Just when those foreclosure actions were brought is not disclosed by the evidence, but it is not shown that he had any more equity in them in September, 1932, than when the foreclosure took place. The evidence also discloses that he had no other property of consequence. There is no reason to set aside the finding of the trial court on this point.

Appellants complain principally because the court found that the Boswell avenue property was not the homestead of Isaac S. Sheetz at the time of his death, nor the homestead of Mrs. Sheetz at the time she conveyed it to her daughter in September, 1934. On this point we are met with a controversy between counsel as to the effect of the decree of divorce of October 23, 1926, upon the homestead rights respectively of Mr. and Mrs. Sheetz. It is clear the decree terminated as of that date any homestead rights Mrs. Sheetz had in the property, at least there is no argument here to the contrary. Appellees contend it also terminated the homestead rights of Isaac S. Sheetz in the Boswell avenue property. Appellants contend it had no such effect; that as far as his homestead rights were concerned, the divorce had no more effect than would have resulted from the death of Mrs. Sheetz, citing *Dougherty v. White*, 112 Neb. 675, 200 N. W. 844, 36 A. L. R. 425, and other authorities in support of that view. Appellants further argue that the Boswell avenue property was still the homestead of Isaac S. Sheetz, notwithstanding the decree of divorce, and that when he remarried Mary J. Sheetz on December 26, 1926, it became also her homestead. These specific points urged by appellants appear not to have been passed upon in this state, and we find it unnecessary to pass upon them in this case. Conceding, for the purpose of this case only, appellants' position on these points to be well taken, it is well established that a homestead once acquired may be lost by abandonment. At the date of the remarriage the property had already been leased, and was in fact occupied by a tenant. Neither Mr. nor Mrs. Sheetz ever returned to that property to live during his lifetime, a period of more than six years, but in fact did reside first in a hotel for nearly two years, then in an apartment for about a year, and then in their former home on Garfield avenue about three years. Appellants contend Mrs. Sheetz always regarded the Boswell avenue property as her home and continuously intended to return to it and occupy it as such. Her testimony and some other evidence is to that effect. There is very little, if any, declaration to that effect on the part of

Mr. Sheetz. Appellants contend that she was prevented from returning to occupy the Boswell avenue property because of the fact that it was leased. There is much in the evidence which weakens that argument. The first lease made on that property was for one year, which expired December 1, 1927. Nothing is shown in the record which prevented Mr. and Mrs. Sheetz from moving into that property on the termination of that lease. As a matter of fact, a new lease was given the tenant, but he surrendered it in January, 1928. Nothing is shown to prevent Mr. and Mrs. Sheetz moving into the property at that time. Instead of doing so they joined in a lease of the property to another tenant for a year, and in successive renewals thereof. At the termination of any year they could have reoccupied the property, so far as any evidence in this case is concerned. They did, in fact, live at other places, which places they repeatedly declared to be their home for the purpose of registering and voting. While that alone is not controlling, it is a matter to be taken into account. The courts have been very liberal in sustaining a claim of homestead rights, both when the question has arisen on the acquiring of a homestead, or when it has arisen on the abandonment of a homestead. Whether one has acquired a homestead, or having acquired it has abandoned it, is a question of fact to be determined by the trial court under the evidence pertaining thereto. This court examines the findings of the trial court on that question only to see if they are sustained by sufficient evidence. In this case there is substantial, competent evidence to sustain the findings of the trial court. Indeed, it would be difficult to find such evidence in the record to sustain a finding to the contrary. These views accord with our former decisions, of which the following is a partial list: *Pitney v. Eldridge,* 58 Kan. 215, 48 Pac. 854; *Quinton v. Adams,* 83 Kan. 484, 112 Pac. 95; *Rose v. Bank,* 95 Kan. 331, 148 Pac. 745; *Schlaudt v. Hartman,* 105 Kan. 112, 181 Pac. 547; *Carlson v. Ritchie, Administrator,* 115 Kan. 722, 224 Pac. 895; *Blitz v. Metzger,* 119 Kan. 760, 241 Pac. 259; *McLain v. Barr,* 125 Kan. 286, 264 Pac. 75; *Peoples State Bank v. Hill,* 125 Kan. 308, 263 Pac. 1045; *Roberts v. First Nat'l Bank,* 126 Kan. 503, 268 Pac. 799; *Angola State Bank v. Fry,* 130 Kan. 641, 287 Pac. 245; *Farmers State Bank v. Weeks,* 138 Kan. 376, 26 P. 2d 262; *Hammond v. Neely,* 138 Kan. 885, 28 P. 2d 726.

It is not contended that Mary J. Sheetz, being then a single woman, could establish homestead rights to the Boswell avenue property by moving into it August 17, 1933, unless she had such home-

stead rights immediately prior thereto. Neither is it seriously contended that the deed to that property, executed by Mary J. Sheetz July 9, 1934, to her daughter, is not fraudulent as to plaintiff if the property was not then the homestead of the grantor. In our view of the record the court correctly decided both these matters.

Appellants seriously contend the court erred in setting aside the deed to the Boswell avenue property of September 7, 1932, from Isaac S. Sheetz to his wife, Mary J. Sheetz, and in holding the property subject to the payment of his debts. At the time he made this deed he was indebted to the bank and the investment company, which later filed claims and had them allowed against his estate. He died about four months after making this deed and left no other property sufficient in value to pay claims allowed against the estate and costs of administration. The trial court found this deed was without consideration and was a gift. As we have heretofore seen, these findings were supported by substantial, competent evidence. Our statute (R. S. 23-201) relating to married women is that the real property of a married woman received by her as a gift from her husband is still liable for his debts. (*Citizens' Bank v. Bowen,* 21 Kan. 354, 364.) Such a gift is fraudulent as to creditors of the husband without regard to the motive which prompted it. At best she holds the title in trust for the payment of his debts. (*Carter v. Becker,* 69 Kan. 524, 77 Pac. 264.)

Appellants contend the cause of action of the intervenor, primarily based on the claims of the creditors of Isaac S. Sheetz, is barred by our nonclaim statute (R. S. 1933 Supp. 22-702). The claims were filed in the probate court February 5 and 14, 1934. This was within one year after letters of administration were first issued, hence they are not barred by the nonclaim statute.

Appellants contend the intervenor's cause of action, if any, was barred by the two-year statute of limitations (R. S. 60-306, 3d clause). The deed was dated September 7, 1932. The intervening petition in this case was filed in June, 1935. Appellants argue that the fraud, if any, was committed at the time the deed was executed and recorded, and that an action to set it aside on account of fraud should have been brought within two years, citing *Kittel v. Smith,* 136 Kan. 522, 16 P. 2d 538, and cases therein cited. R. S. 60-306 is not controlling here for the reason that we have a statute (R. S. 22-803) pertaining to the time of bringing an action to sell lands of decedent for the payment of his debts which are alleged to have been fraudulently conveyed. That time is three years. The inter-

vening petition was filed within that time. The trial court correctly held the intervenor's cause of action was not barred by any statute of limitation.

The judgment of the trial court is affirmed.